### 16645

GILLESPIE v. FORD *ET AL.*

(71 S. E. (2d) 596)

*Messrs. Harris & Harris,* of Anderson, *for Appellants, Dewey A. Ford and One 1946 Ford Automobile,*

48

*Messrs. Watkins & Watkins,* of Anderson, *for Appellant, Liberty Life Insurance Company,*

*Messrs. W. G. Acker* and *John D. Vickery, Jr.,* of Pickens, and *W. Harper Welborn,* of Anderson, *for Respondent,*

July 8, 1952.

BAKER, Chief Justice.

We find it more convenient in writing this opinion to refer to the respondent and the appellants as plaintiff and defendant or defendants, respectively.

This case was brought by the plaintiff, Catherine Gillespie, to recover damages for personal injuries sustained by her when an automobile which she was driving was in collision on December 18, 1950, with the automobile mentioned as a defendant, which was being driven by the defendant Dewey A. Ford; and Liberty Life Insurance Company was also made a party defendant upon the alleged theory that Ford was an agent or servant of this Company, engaged at the time of the collision in the scope of his employment.

The case was instituted in the Court of Common Pleas for Anderson County, and came on for trial in that Court before Judge Martin and a jury at the April, 1951, term. A motion for a nonsuit by Liberty Life Insurance Company and motions for directed verdicts in behalf of all the defendants were overruled; and the case was submitted to the jury resulting in a verdict in favor of the plaintiff against all of the defendants in the sum of $5,000.00. The appeal is from the judgment entered thereon.

The complaint of the plaintiff alleged that the collision and resulting damages to her was the direct and proximate result of the negligent and reckless manner in which the defendant automobile was being driven by the defendant, Dewey A. Ford, in the following particulars:

"(a) In that the Defendant, Dewey A. Ford, was not keeping a proper lookout and failed to use any regard for other motorists using the Highway.

"(b) In that the Defendant, Dewey A. Ford, was operating the Defendant automobile at a high and unlawful rate of speed.

"(c) In that the Defendant, Dewey A. Ford, failed to yield the right-of-way to Plaintiff, who was approaching on a through Highway which had the right-of-way."

The answer of the defendant, Ford, denied the allegations of the complaint alleging negligence and recklessness on his part, though admitting that on about the time mentioned there was a collision between the motor vehicle he was driving and the motor vehicle the plaintiff was driving. It was further alleged therein "that any injury plaintiff sustained was occasioned by and the direct and proximate result of plaintiff's own sole negligence, carelessness, recklessness, wilfulness, and wantonness"; and further, "that any injury plaintiff sustained was occasioned by and the direct and proximate result of the contributory negligence of plaintiff."

The motion for a direction of verdict for the defendant was made on the grounds that the evidence conclusively shows that the acts of the plaintiff herself brought about any damage or injury she sustained, and that even if the defendant was negligent, the contributory negligence of the plaintiff was a proximate cause of her damage or injury, without which the collision would not have occurred, thus barring a recovery by her.

The main question raised by the defendant, Ford, and the only one necessary for us to discuss and decide, as we view the record, is whether the Presiding Judge erred in refusing the motion of this defendant for a direction of verdict in his behalf. If this question is answered in the affirmative, then the other defendants, that is, the defendant automobile, owned and driven by the defendant Ford at the time of the collision, and the defendant, Liberty Life Insurance Company, were likewise entitled to a direction of verdict in their behalf.

On the day of the collision, which collision occurred near the center of a right angle intersection of two secondary roads in Anderson County, the plaintiff was travelling in an easterly direction, and the defendant in a southerly direction. The marks on the pavement indicated that the cars came together slightly to the left of the center of the road on which the plaintiff was travelling, and also definitely to the left of the center of the road on which the defendant was travelling. The road on which plaintiff was travelling was paved on both ends of the intersection, but the road on which the defendant was travelling was paved only to the intersection from the direction in which he was approaching.

A witness for plaintiff, James Clardy, who lives near this intersection, testified that "from the direction Mrs. Gillespie (plaintiff) was approaching there is an underpass for cows about a 100 steps from the road intersection. Mr. Ford (defendant) was coming from the North over a slight rise. After a person coming from the direction Mrs. Gillespie was driving crosses the underpass, you can see up the road to her left about 200 steps." (Witness put the ink dot on Exhibit "A", a rough sketch of the approaching roads and the intersection, indicating where the cars hit near the center of the intersection.) This witness also testified that "both cars were running pretty fast at the time of the accident," but he later stated, "the noise of the wreck attracted my attention, and they went together just as I turned around. They were six or eight feet apart when I first looked." When the cars went together, "they seemed to rear up." As a result of the collision, the Gillespie car ran in a circle to its right, and until it went into a ditch, and Ford's car skidded across the highway into the yard of a Mr. Ballard whose residence was in the southeast corner of the intersection.

Mrs. Gillespie (the plaintiff) testiled in her own behalf, and we gather therefrom that she was aware of these cross roads, and knew that she was approaching an intersection.

Before quoting from the testimony of plaintiff, it should be noted that a cattle underpass under the highway upon which she was approaching the intersection is also referred to in the testimony as a bridge, and is to the west of the intersection of the two roads, the direction from which plaintiff was approaching.

We quote from plaintiff's testimony:

"Q. Now, Mrs. Gillespie, here is the diagram of the intersection of where the wreck occurred. Do you remember seeing a bridge before reaching the intersection? A. Yes, sir.

"Q. Do you know how far that bridge is before you get to the middle of the intersection? A. I would say approximately one hundred or one hundred and fifty feet.

"Q. Mrs. Gillespie, before reaching the bridge explain the contour of the road, or of the land, to your left. State whether or not the land is high or low. A. It seemed to me to be higher. I was in a low place before I came to that bridge.

"Q. Before reaching the bridge could you see up this road to the left before reaching the bridge? A. No, there was an obstruction.

"Q. After passing the bridge, point out here (presenting diagram) when you could first see the road to your left? A. The bridge was here (pointing) and I crossed the bridge and slowed down and looked to the left to see if anyone was coming and I looked up this road and I didn't see anything and I felt like the road was clear and turned my eyes toward the highway and proceeded on.

"Q. Tell the court and jury just how far up this road you can see. A. I could see about twice the distance of where I was to the intersection.

"Q. About three hundred feet? A. Yes, sir.

"Q. Tell what happened before the wreck? A. When I looked to the left and didn't see anything I came to a rough place in the road and I naturally slowed up at the rough place in the road and proceeded to enter the intersection

and I didn't know anything more, that is until I came to in the house.

"Q. How fast were you driving immediately before the accident? A. The last time I looked at the speedometer I was going thirty miles an hour.

\* \* \*

"Q. How far were you from the intersection when you looked to the left and then looked back into the road and then didn't look any more? A. About one hundred feet.

"Q. After you looked to the left and then looked up the highway you didn't look back to the left any more? A. No, sir.

"Q. You were the driver and alone in the car? A. Yes, sir.

"Q. You were on the left-hand side of the road? A. Yes, sir.

"Q. That road is on the left-hand side of this road, isn't it? A. Yes, sir.

"Q. It would of been mighty easy for you to look to the left again, wouldn't it? A. Yes, sir.

"Q. You didn't do it though? A. No, sir.

"Q. You say that was after you crossed the little bridge, I believe you call the cattle-pass? A. Yes, sir, I had crossed the little bridge when I looked to the left.

\* \* \*

"Q. There is kind of a hill between the two roads that hides it up to a certain time, is there not? A. Yes, sir.

"Q. And after you get so far you can see it? A. Yes, sir.

"Q. Mr. Ford would have seen you only a short distance and you would have seen him only a short distance? A. Yes, sir."

The car that plaintiff was driving was badly damaged, especially the front left wheel, and the left door was sprung open. Plaintiff was thrown from or fell out of the car, and was unconscious until after she had been carried into the Ballard home. She did not at any time see the automobile with which the automobile she was driving collided, and

when asked if she was knocked unconscious by the wreck, answered that she didn't remember being hit. Photographs of defendant's car were in evidence showing that it was hit on the front right fender, bashing in the front portion of the said fender and the headlight in same, the front right wheel was badly damaged, and the rear right fender has the appearance of having come in contract with some object. There were no stop signs or other traffic signals on either highway indicating that an intersection of roads was about to be reached, nor were there any warning signs to reduce speed.

On plaintiff's Exhibit A (a rough diagram of the intersection and the roads leading thereto), the tire marks of defendant's automobile from the application of brakes are shown beginning for a distance of approximately fifty feet from the intersection, and on into the intersection, although as his car was entering the intersection it was turned to the left which evidences the further effort of the defendant to avoid a collision, and explains the point of the collision of the cars to the left of the highway upon which defendant was travelling as it extended into the intersection.

The foregoing is a fair summary of the testimony in behalf of the plaintiff, and of some of the undisputed facts. It may be that there was other testimony in behalf of the plaintiff which influenced the trial Judge in refusing to grant defendant's motion for a direction of verdict, but if so, it is not in the record, and we are, of course, bound by the record as it comes to us.

The testimony of the defendant was that he was unfamiliar with that portion of the road upon which he was travelling at the time of the collision, never having travelled it before; that the intervening land between the way plaintiff and he were approaching the crossing or intersection was raised (and this is borne out by photographs in evidence), and automobiles could not be seen a great distance from the intersection from either approach; that approaching as he did,

the road was up-grade to the crest of a hill, and then down-grade to the crossing; that he could not see the cross-roads until reaching the crest of the hill, and it was then only a very short distance to the intersection; that he was travelling at 40 to 50 miles an hour, and the road upon which he was travelling was clear of traffic both to his front and rear; that upon observing the crossroad, he removed his foot from the accelerator, and looked first to his left, which would be the oncoming traffic first reached, if there was an oncoming traffic, and then to his right, saw the plaintiff's car approaching and "I began to hit my brakes," and did everything he could to avoid a collision, but as he entered the intersection, the motor vehicle plaintiff was driving collided with the front right side of his car when it was three or four feet in the intersection; that he believed he reached the intersection first, but plaintiff was driving at a high rate of speed, while he had come to an almost complete stop, and that if plaintiff had been driving on the right of the center of the road on which she was travelling, instead of to the left, the accident would not have occurred. It may be stated here that a witness for the defendant, J. E. Rogers, who reached the scene of the accident very soon after it occurred, and viewed the situation, identified on a rough sketch (Exhibit M) of the intersection, the point where the cars collided as being very close to the point where the road upon which defendant was travelling entered the intersection, indicating that the car which plaintiff occupied was being driven considerably to the left of the center of the road she was travelling; and the point of collision was also to the left of the center of the road the defendant was travelling.

The only probative evidence of negligence on the part of the defendant which we find in the record, comes from the defendant himself, when he testified that as he reached a point on the highway upon which he was travelling where he could see he was approaching a road intersection or crossing, that he did not immediately "hit the brakes," so as to comply with subsection (c) of Section 60, of Act 281

of the Acts of 1949 regulating traffic on public highways, reading in part as follows: "The driver of every vehicle shall, consistent with the requirements of (a) drive at an appropriate reduced speed when approaching and crossing an intersection * * *." It is true that plaintiff's witness, James Clardy, testified that both cars were running pretty fast at the time of the accident, but he later stated "the noise of the wreck attracted my attention, and they went together just as I turned around. They were six or eight feet apart when I first looked." It is therefore obvious that this witness could not know or judge the speed at which either of the automobiles was travelling, and his testimony on this issue carries no weight.

The defendant will have to rely upon his defense of the contributory negligence of the plaintiff being the proximate cause of her injuries. And, apparently, there is abundant testimony to support such defense. Therefore, the sole issue to be decided is whether the trial Judge erred in refusing to grant a direction of verdict in his behalf.

"It is true, as a rule, that the question of contributory negligence is usually a mixed one of law and fact and is usually for determination by the jury. But it is also true that when the evidence admits of but one reasonable inference, it becomes a matter of law for the determination of the Court." *Bolen v. Strange,* 192 S. C. 284, 6 S. E. (2d) 466, 469.

Section 67 of the 1949 Act, reads: "(a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway except as follows:" (Exceptions not involved in this case.) The applicable portion of Section 72 of said Act is as follows: (a) No vehicle shall at any time be driven to the left of the roadway under the following conditions:

* * *

"(2) When approaching within 100 feet of or traversing any intersection * * *."

While under the facts of this case where all of the evidence, circumstantial and direct, is that the defendant was doing his utmost to yield the right of way to plaintiff's automobile, after becoming aware that he was approaching an intersection of highways and that a vehicle being driven on the intersecting road was also approaching the intersection, we deem it advisable to also call attention to the portions of Section 85 of the 1949 Act, reading as follows: "(a) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway. (b) When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right." In connection therewith, we quote from the opinion of this Court in *North State Lumber Co. v. Charleston Consolidated Ry. & Lighting Co.,* 115 S. C. 267, 274, 105 S. E. 406, 408: "The erroneous notion seems to be prevalent that, if one has the right of way, as it is called, he may proceed without regard to circumstances, conditions, or consequences. Even when one has the right of way, he is still bound to exercise due care for his own safety, and to prevent injury to others."

In *Branham v. Wolfe Transportation Co.,* 170 S. C. 164, 169 S. E. 889, the testimony revealed that the collision between plaintiff's automobile and defendant's truck occurred at the crossing of Main and Wheat Streets, in the City of Columbia. Plaintiff testified that he was travelling north on Main Street at a rate of about ten miles per hour, and that the truck was being driven west on Wheat Street at between thirty-five and forty miles per hour; that he did not see the truck until they were about fifteen feet apart, but that he had not looked up Wheat Street before that time.

Under an ordinance of the City of Columbia, the truck had the right-of-way. One of the defenses of the defendant

was the contributory negligence and wilfulness of the plaintiff.

The defendant moved for a direction of verdict in its behalf upon the ground that the evidence had failed to establish any actionable negligence on its part; that the only reasonable inference to be drawn from the evidence was that plaintiff was guilty of contributory negligence and wilfulness, and that the evidence was not sufficient to support an inference of wilfulness on its part. The trial Judge granted the motion, saying that it .appeared that the collision was "caused by plaintiff running into the truck," and that even if the latter was exceeding the speed limit, this was not the proximate cause of the accident. Upon appeal, this Court stated: "The trial Judge apparently grounded his decision upon the view that plaintiff's negligence was the sole cause of his injury. He might properly have held further that at best plaintiff was guilty of contributory negligence and wilfulness. We do not mean to imply that the mere fact that a vehicle has the right-of-way will absolve its driver from the use of such care as the circumstances may require, but only that plaintiff's actions, in all the circumstances of the present case, must debar him from recovery."

This Court held in *Tinsley v. Paris,* 174 S. C. 412, 178 S. E. 496, that the operation of a vehicle on left side of highway, in violation of statute, where injury results, raises a presumption, though not an irrebuttable one, that such violation proximately caused the injury. See also *Sanders v. State Highway Department,* 212 S. C. 224, 47 S. E. (2d) 306, wherein there is quoted from *Lusk v. State Highway Department,* 181 S. C. 101, 186 S. E. 786, 793, the rule of law following: "If the only reasonable inference to be drawn from all of the testimony is that the negligence of the complainant is a direct and proximate cause of the injury and damage, or that the negligence of the complainant contributed as a direct and proximate cause, then it would be the duty of the trial judge to order a nonsuit or direct a verdict against such plaintiff."

In *Lawter v. War Emergency Co-operative Ass'n,* 213 S. C. 286, 49 S. E. (2d) 227, 231, the Court had for consideration a collision at an intersection of two highways between a truck to which was attached a trailer loaded with cotton, and a truck and tanker, loaded with gasoline. This action was brought to recover damages for the alleged wrongful death of J. T. Lawter, the driver of the cotton truck, who died almost instantly from injuries received in the collision. The complaint alleged that the death of plaintiff's intestate was caused by the negligent operation of the oil tanker. This was denied by the answer, and the defense of contributory negligence was also interposed. At the conclusion of all of the testimony, a motion for a direction of verdict in favor of defendants was granted on the ground that plaintiff's intestate was guilty of contributory negligence as a matter of law, which action of the lower court was affirmed on appeal. Plaintiff's intestate was travelling on a highway which required him to stop before entering the intersection, and defendant truck was on a through highway, but the affirmance of the action of the lower court was not bottomed on this. We quote from the decision in the case:

"* * * Respondents assert, and the Court below held, that the testimony conclusively shows that plaintiff's intestate failed to stop before entering the intersection. But we do not think that this is the only reasonable inference to be drawn from the testimony.

"We now reach the crucial question of whether plaintiff's intestate was guilty of contributory negligence as a matter of law in failing to yield the right of way to the oil tanker. When he reached the intersection, was the tanker approaching so closely 'as to constitute an immediate hazard', which should have been observed by him in the exercise of ordinary care in keeping a proper lookout? We think this is the only reasonable inference to be drawn from the evidence. The conclusion is inescapable that if plaintiff's intestate had kept a proper lookout, he would have seen the approaching tanker and would have known in the exercise of ordinary

care that it was hazardous to enter the intersection. The undisputed testimony shows that this tanker was approaching the intersection at a speed not exceeding 30 or 35 miles an hour. When plaintiff's intestate was within 50 or 60 feet of the intersection, he could not have failed to see the approaching tanker if he had used due care in keeping a proper lookout. The physical facts show that the two vehicles reached the intersection almost at the same time and the undisputed testimony of the eyewitnesses is to the same effect. If the plaintiff's intestate failed to look for approaching traffic before entering the intersection, he was guilty of negligence. *Branham v. Wolfe Transportation Co.,* 170 S. C. 164, 169 S. E. 889. If he looked and saw the tanker approaching, he was negligent as a matter of law in not yielding the right of way and in undertaking to cross the intersection.

"The argument which appellants' counsel make in seeking to establish negligence on the part of the driver of the tanker in failing to keep a proper lookout applies with equal force to the driver of the cotton truck. As stated in the recent case of *Bishop v. Atlantic Coast Line Railway Co.,* [213 S. C. 125], 48 S. E. (2d) 620, 627, 'it would seem illogical to hold that due care by respondents would have prevented the accident and yet ignore the correlative fact that due care by the decedent would also have prevented it.' "

The testimony in the case at bar, which we have hereinbefore summarized, and which will necessarily be somewhat repetitious, will now be considered in the light of the statutes quoted, and of the foregoing principles.

Plaintiff was familiar with the highways, and knew she was aproaching an intersection. About one hundred feet from the intersection, and when driving at about thirty miles per hour, she looked to the left (the direction from which defendant was approaching) and did not see any vehicle. She did not look any more except down the highway she was travelling, and proceeded upon the highway, and into the intersection without ever again looking to her left or seeing

the approaching motor vehicle of the defendant with which the car she was driving collided. And as we read the record, she admitted in her testimony that she was travelling on the "left-hand side of the road," certainly within one hundred feet of the intersection, if not at the time of entering upon the intersection. There is nothing in the record to show whether this admission was made on direct or cross-examination, although the questions indicate that it was upon cross-examination. If the admission did not also cover the time of entering the intersection, we may safely assume that plaintiff's alert counsel would have examined her further on the issue. We repeat that we are bound by the record as it comes to us.

It is apparent that the plaintiff approached and entered upon this intersection in a negligent, careless and reckless manner, without due regard for her own safety or the safety of others who might be entering thereon from the other road or highway, and in violation of the statutes and the principles of law hereinabove set forth, all of which contributed as a proximate cause to her injury; and therefore, she is barred from a recovery of damages for the injuries suffered by her.

We can reach no other conclusion than that the trial Judge erred in refusing the motion of all defendants for a direction of verdict.

Reversed and remanded for entry of judgment in favor of the defendants.

STUKES, TAYLOR and OXNER, JJ., concur.

FISHBURNE, J., not participating.