MATTHEW J. KANE, appellant, v. NELLIE CAMPISANO, also known as Ellen B. Campisano, et al., appellees.

No. 51041.

(Reported in 124 N.W.2d 172)

OCTOBER 15, 1963.

Charles H. Barlow and Robert F. Culver, both of Emmetsburg, for appellant.

Daniel D. Sanderson, of Estherville, Pendleton & Pendleton, of Storm Lake, and Burt & Prichard, of Emmetsburg, for appellees.

SNELL, J.—This is an action in equity to quiet title to a farm in Palo Alto County. Defendants cross-petition asking that title be quieted in them. Cross-petitioners also ask judgment for rent.

The real issue is whether there was a valid delivery of a deed executed in 1939 but not discovered by the present litigants until 1960 or 1961. The principal litigants are the sons and daughters of Bridget E. Kane, deceased.

Time and the death of those who might have explained leave unanswered why a deed was not recorded for 16 years after it should have been by its accompanying directions.

While the situation is in some ways fantastic and the interpretation of the evidence is in dispute what evidence we have is not in material controversy.

The farm in question had been homesteaded by the litigants' ancestors. Since the early years of the present century, and probably before that, some members of the litigants' immediate family have lived thereon. Prior to 1933 title had been lost by the then owner, a bachelor brother of Bridget E. Kane. In November 1933 with borrowed money and refinancing Bridget E. Kane bought the farm and took title. She, her husband and their son, Matthew J. Kane, also known in the record as Dude Kane, plaintiff-appellant herein, signed the mortgage. They, together with plaintiff's wife, were living on the farm and operating it at the time. This arrangement continued although advancing years kept the parents' active work to a minimum. Plaintiff and his wife had six children all born and reared on the farm.

Bridget E. Kane's husband, father of the principal litigants, died in 1937. Occupancy and operation of the farm continued with Bridget E. Kane, plaintiff and his family living thereon. The income was applied to their support and the payment of interest, principal on the mortgage, taxes, upkeep and improvements.

On July 18, 1939, Bridget E. Kane made, executed, acknowledged and delivered to Edward D. Kelly, an attorney in Emmetsburg, a warranty deed, regular on its face, conveying the farm to Matthew J. Kane in consideration of one dollar and

other valuable considerations. Mr. Kelly as notary public took Mrs. Kane's acknowledgment on the deed.

Coincident therewith Mrs. Kane gave to Mr. Kelly a written instrument in words and figures as follows:

"ESCROW DIRECTIONS:

"To EDWARD D. KELLY:

"I herewith hand you the deed which I have this day executed and delivered conveying the SW ¼ and S ½ Se ¼ of 2-96-33 to my son, Matthew J. Kane, I would like to have this held of record until my death and I therefore request that you hold it for the grantee, recording it after my death.

"Please procure the necessary revenue stamps affix, and cancel in my name, if I fail to bring them to you in the next few days.

"Dated 7-18-39.

"/s/ Bridget E. Kane"

A few days later Mr. Kelly made, initialed and preserved a memorandum in words and figures as follows:

"July 27, 1939

"Mrs. Kane called and reported that she was owing money to the husbands of two of the girls. That she expects Dude to make some arrangements to take care of all of her debts. I have advised her that Dude would undoubtedly do that as they would have their legal remedies to set aside the deed unless that was done, but I assured her that I would make a memoranda so that Dude would understand her intentions.

"E.D.K.

"EDK:IJ"

The typist's initials I.J. identify Iris Jordan, for many years secretary to Mr. Kelly.

These three instruments, the deed, escrow directions and memorandum, were all identified by Iris Jordan as original instruments from Mr. Kelly's files. They were put in an envelope and placed in Mr. Kelly's safe or files where they remained, unknown to the grantee in the deed, for over 20 years.

Assuming the regularity of the descriptions the farm originally consisted of 240 acres.

Apparently a drainage ditch cut through and divided the farm. How many acres were taken by this ditch does not appear.

In August 1941 Mrs. Kane, by warranty deed, transferred the 64.06 acres east of the drainage ditch to Ben D. Weisbrod. Mr. Kelly also took the acknowledgment on this deed. Mr. Weisbrod is not a party to this action and his title is not challenged. This transaction is of no importance now except as it might show Mrs. Kane's and Mr. Kelly's understanding of the prior deed in escrow.

In January 1944 Mrs. Kane was in failing health. She was in her last illness and was bedfast until her death on May 1, 1944. Sometime in January 1944 she was taken from her home to a hospital in Emmetsburg. She was in the hospital until the latter part of February 1944 when she was returned to her home (also plaintiff's home) where she remained until her death.

On February 4, 1944, Mrs. Kane made, executed, acknowledged before Iris Jordan, a Notary Public (secretary to Mr. Kelly), and delivered a warranty deed conveying the farm to Margaret Kane and Nellie Campisano (daughters of grantor) in joint tenancy with right of survivorship.

Coincident therewith and as a part of the same transaction there was executed a written trust agreement between Bridget Kane as trustor and Margaret Kane and Nellie Campisano as trustees. This instrument was signed and acknowledged by the three parties thereto.

The trust agreement is of some length and rather detailed. It provides in substance for the rental and management of the farm by the trustees. It provides that as long as plaintiff "desires to remain on the farm and keeps a reasonable rent in good standing he shall be entitled to stay there as a tenant. However if he fails to pay such reasonable rent as may be demanded by the trustees, then his privilege of staying shall stand as terminated and the trustees may require him to move. The terms of rent are left to the discretion of the trustees and they may extend any privileges or special terms to Dude Kane as in their judgment they deem reasonable and just."

The agreement provides that after the death or removal from the farm of plaintiff the trust should be liquidated. It was

then provided that $300 be paid to Francis Cain and $100 to Robert Carlisle. They are not otherwise identified. Twenty-five dollars were to be paid to James Kane and $25 to Gene Kane, sons of the trustor. The remainder was to be distributed $\frac{1}{4}$ to Margaret Kane, $\frac{3}{16}$ to each of the other three daughters of the trustor and $\frac{3}{16}$ to the trustees as a spendthrift trust for the children of plaintiff herein.

On May 5, 1944, four days after the death of Mrs. Kane, the deed to Margaret Kane and Nellie Campisano was recorded. It does not appear that the trust agreement was recorded.

Shortly after Mrs. Kane's death the sisters, Margaret and Nellie, went to the Kane farm. They advised plaintiff of the deed to them and requested that plaintiff sign a lease with them. Plaintiff refused. Plaintiff and his wife went to the office of Mr. Kelly to inquire about the situation. Mr. Kelly said "well, it's a mess." At this point in the trial counsel for defendants interposed an objection and the rest of plaintiff's conversation with Mr. Kelly was not received. Mr. Kelly gave plaintiff an unsigned copy of the trust agreement but did not tell plaintiff and his wife about the escrow deed.

During the next sixteen years plaintiff and his wife recognized the authority of the trustees and made payments to or through Margaret. During this time plaintiff made many improvements on the farm and the mortgage indebtedness was paid.

Mr. Kelly died December 15, 1957. Margaret Kane died October 24, 1960. Nellie Campisano was the survivor in the joint tenancy deed.

Shortly thereafter a dispute arose between Nellie and plaintiff. Nellie demanded that plaintiff vacate the premises. Plaintiff then started this action to quiet title in himself. Plaintiff based his claim on adverse possession. He did not then know about the escrow deed to him.

Nellie Campisano answered and by verified cross-petition claimed to be the absolute owner under the deed from Bridget Kane. She made no mention of the trust agreement.

At about the same time she started a separate action for rent claiming to be the absolute owner in fee simple.

Two months and twenty-two days later Nellie Campisano filed her amended and substituted answer and amended and substituted cross-petition individually and as trustee claiming under the deed and trust agreement and attaching copies.

About this time Iris Jordan, former secretary to Mr. Kelly, at the request of plaintiff's counsel, looked through Mr. Kelly's files and found the escrow deed, directions and memorandum above referred to and set out. Plaintiff thereupon filed a reply setting out these documents and claiming title thereunder. Plaintiff as an affirmative defense called attention to the inconsistency in cross-petitioner's position, she having at first claimed absolute ownership in herself.

There was then filed in behalf of cross-petitioner an unverified reply admitting that she had claimed ownership in fee simple absolutely but alleging affirmatively that at the time of the commencement of this action she was not apprised of the existence of an executed copy of the agreement. This pleading is artfully worded. It does not deny knowledge of the agreement. It merely alleges that at the time she was "not *apprised* of the *existence* of an *executed copy*." (Emphasis supplied.) This excuse taxes our credulity because she had signed and acknowledged the agreement and had participated in the operation of the farm thereunder for sixteen years. Just what she thought had happened to the executed copy does not appear.

If the executed trust agreement had not been produced and had she prevailed as she claimed at first she would have profited by taking the whole farm to the exclusion of the cestuis que trust. Her first position can only be explained as a fortuitous lapse of memory or an attempted fraud. In any event the position in which she has either found or placed herself does not appeal to the conscience of a court of equity. A trustee should not so act as to invite a suspicion of skulduggery. We also note that this pleading was not verified, although the original pleadings were verified, and that Nellie Campisano did not testify at the trial.

The Chief of Police of Emmetsburg, a brother of plaintiff's wife, was called as a witness by plaintiff. He testified that he was familiar with the farm and had helped with the work many

times. He knew all the family, including Bridget Kane, very well and had visited with her many times. He testified Bridget Kane had commented many times on how good plaintiff and his wife had been to her and to Grandpa Kane; that plaintiff had nothing to worry about and that the farm was absolutely theirs.

None of the defendants testified at the trial. Other than the exhibits the only evidence offered by defendants was testimony as to the reputation of Edward D. Kelly and the rental value of the farm.

We agree with the trial court that Edward D. Kelly was a man of integrity and a lawyer of ability. He would not have knowingly participated in a fraud but lack of information as to the background and purpose of the 1944 deed and trust agreement could have caused uncertainty as to what he should do. To what extent he was privileged to advise as to the legal effect of the various transactions involved in this case or the extent in which Mrs. Kane may have followed or disregarded his advice will never be known.

Such equities as there are in this case are with the plaintiff. He and his wife and family did the work on the farm and must have produced enough income over and above their living expenses to retire the mortgage. It has been released. The farm has been improved. Plaintiff and his wife took care of the old folks and earned an expression of gratitude by his mother. Herein we disagree with the trial court who found the equities balanced.

There is in the record no suggestion that Bridget Kane had any income other than from the farm operated by plaintiff. In her phone call to Mr. Kelly she mentioned debts. Her estate was not probated and we have no suggestion of any debts when she died.

There is nothing in the record to indicate that any of the defendants did anything to merit particular appreciation by Bridget Kane or consideration by a court of equity.

Idle speculation as to why things were done as they were or not done as they should have been leads nowhere. We can only determine what was actually done and the legal effect thereof.

I. While our review is de novo we give weight to the trial

court's findings. Jeppesen v. Jeppesen, 249 Iowa 702, 704, 88 N.W.2d 633. We are not, however, bound thereby. (Citations unnecessary.) See rule 344(f)7, Rules of Civil Procedure.

In the record before us we find no support for some of the trial court's findings and accordingly disagree therewith.

II. There is only one basic issue. Was there valid delivery of the 1939 deed? Other matters are only incidental. If at the time of delivery to the escrow agent the delivery was unconditional and without the right of recall a subsequent change of mind would be ineffective. If the grantor at the time of delivery reserved the right of recall the deed conveyed no vested right.

Delivery is essential to the validity of a deed. Title does not pass through an undelivered conveyance. Wagner v. Wagner, 249 Iowa 1310, 1316, 90 N.W.2d 758, and cases cited therein.

The intent of the grantor is controlling and is to be determined by his acts or words or both. Jeppesen v. Jeppesen, supra, loc. cit. 707; Smith v. Siechert, 253 Iowa 788, 791, 113 N.W.2d 699; and Ferrell v. Stinson, 233 Iowa 1331, 1336, 11 N.W.2d 701.

"For a valid delivery the grantor must intend the deed to be presently effective as a transfer of title without any reservation of control thereover." Robinson v. Loyd, 252 Iowa 1086, 1092, 109 N.W.2d 619, 622.

In Brandt v. Schucha, 250 Iowa 679, 687, 96 N.W.2d 179, 184, we said:

"We have frequently held an effective delivery may be made by placing the deed with a third person, *without reserving the right to recall it*, with instructions to deliver to the grantee upon the grantor's death. The effect of thus placing the instrument with a third person is to reserve a life estate to the grantor with title immediately passing to the grantee, but the latter's right to possession is postponed until the grantor's death." (Citations)

To like effect and similar wording see Hilliard v. Hilliard, 240 Iowa 1394, loc. cit. 1399, 1400, 39 N.W.2d 624; Ferrell v. Stinson, supra, 233 Iowa 1331, loc. cit. 1337, 11 N.W.2d 701; Smith v. Fay, 228 Iowa 868, 873, 293 N.W. 497; Bohle v.

Brooks, 225 Iowa 980, 985, 282 N.W. 351, 354; Goodman v. Andrews, 203 Iowa 979, 981, 213 N.W. 605.

In 26 C. J. S., Deeds, section 41, page 681, it is said:

"The deed will not be regarded as delivered while anything remains to be done by the parties who propose to deliver it. It should be noted, however, that a mistake on the part of the grantor as to the effect which his deed will have when delivered will not affect the validity of the delivery where the intention to deliver it exists. Likewise, a mental reservation contrary to the grantor's expressed intention to convey title, or a subsequent change of intention, does not destroy the effect of a completed delivery."

In 26 C. J. S., Deeds, section 43, page 689, it is said:

"It is not necessary that a delivery of a deed should be made to the grantee himself, but it will be sufficient if it is delivered to a third person for the use of the grantee, and has the same effect as a delivery of the deed directly to the grantee. Such a delivery to a third person for the grantee, however, will not be effectual unless it is made in such a way that the grantor parts with all control over the instrument, and reserves no right to exercise future control of, or to alter, the deed."

In 26 C. J. S., Deeds, section 43 on page 694, it is said:

"If a deed has been effectively delivered to a third person for the use of the grantee * * * a change of intention on the part of the grantor, or the death of the grantor or grantee, will not defeat the delivery."

In 26 C. J. S., Deeds, section 46 on page 699, it is said:

"Generally, the deposit of a deed with a third person for delivery to the grantee on the grantor's death will operate as a valid transfer as of the time of the first delivery, provided the grantor intends irrevocably to vest title in the grantee and surrenders control over the deed."

In the light of well established rules the question before us is clear. What was Bridget Kane's intent at the time of the 1939 deed as shown by what she did and said?

She executed and acknowledged a warranty deed regular on its face conveying her farm to plaintiff. She delivered physical possession of the deed to Edward D. Kelly. She said in writing

over her signature *"I* herewith *hand you the deed which I have* this day *executed and delivered* * * * I therefore request that you *hold it for the grantee,* recording it after my death." (Emphasis supplied.)

There was an actual physical delivery accompanied by a symbolic delivery by written directions. There was a specific direction that the escrow agent hold the deed for the grantee. There was no reservation of the right of recall. Nothing remained to be done to constitute a valid delivery. Clearer words of intent could hardly be found.

We conclude that there was a valid delivery of the 1939 deed to plaintiff. Fortunately there are no intervening equities in favor of any of the defendants.

Other issues before the trial court and argued here need not be discussed.

The case is reversed and remanded for the entry of a decree quieting title in plaintiff.—Reversed and remanded.

All JUSTICES concur.