HATTIE KLOSTERBOER et al., appellants, v. BERNHARD ENGELKES et al., appellees; ALMA SMITH, plaintiff-appellee.

No. 51006.

(Reported in 125 N.W.2d 115)

 

DECEMBER 10, 1963.

Lundy, Butler & Wilson, of Eldora, for appellants.

Beecher, Buckmaster, Beecher & Lindeman, of Waterloo, for appellees except Alma Smith.

GARFIELD, C. J.—This is an action in equity by sisters, and children of a deceased brother, of E. J. Engelkes, deceased, to cancel two deeds, each to an undivided half interest in 240 acres of land, executed by him to his two surviving brothers respectively. Basis of the action is that the deeds were never delivered during the grantor's life and, in any event, the grantees reconveyed the land to the grantor. Following trial, the district court held there was a valid delivery of the two deeds and no reconveyance of the land to the grantor. All plaintiffs but one appeal from decree dismissing their petition.

E. J. Engelkes died unmarried and intestate February 3, 1961. March 6 the two deeds from him sought to be canceled, to his surviving brothers respectively, dated March 12, 1942, each to an undivided half interest in the 240 acres, were recorded in the office of the county recorder. The deeds were prepared in the office of the grantor's attorney, John E. Behnke, at Parkersburg, by Behnke's secretary, signed by the grantor, and left with Behnke to be delivered to the grantees on the grantor's death. It is not claimed the grantor reserved the right to recall the deeds but it is contended conditions were attached to their delivery which made them ineffective until after his death.

Mr. Behnke died before the trial but at least most of his deposition, taken three months earlier, was offered in evidence by one side or the other. It constitutes the principal evidence of the arrangement between the grantor and the deponent. The trial court held delivery was unconditional and title vested in the grantees as of the date the deeds were left with Behnke, subject to a life estate in the grantor. Also that any conversation in which the grantor sought to attach conditions to the delivery took place subsequent thereto and did not affect validity of the deeds.

The land in question was owned by the mother of the grantor, his brothers and sisters, at the mother's death in 1921. Her husband predeceased her. E. J. and his brother B. J. lived on the land from the time their mother died. B. J. was married in 1927 and he and his wife made a home for E. J. on the farm. April 12, 1941, one of the daughters, a plaintiff here, commenced a partition action to have the owners' shares confirmed and the land divided or sold. August 15, 1941, the mother's heirs met in an attempt to settle the matter. E. J. then offered to buy the farm for $107 an acre. The heirs signed a deed to the farm that day which was filed for record June 15, 1942. E. J. was grantee of the deed when recorded. (He was also one of the grantors.) Plaintiffs contend, however, E. J.'s name was inserted as grantee long after August 15, 1941, date of the deed, and it was not delivered to him until the summer of 1942.

It is this 1941 deed allegedly not delivered until the summer of 1942, after the deeds dated March 12, 1942, from E. J. to defendant-brothers B. J. and O. J. were left with Mr. Behnke, that is relied on as reconveying the land to E. J., even if there was a valid delivery of the two deeds executed by him.

I. We consider first whether there was a good delivery of the two deeds from E. J. to his two brothers at the time the grantor left them with Mr. Behnke. It is not claimed there was a valid delivery during the grantor's life if it occurred at any other time. Before further consideration of the evidence we refer to certain basic rules.

While our review is de novo we give weight to the trial

court's fact findings but are not bound by them. See rule 344(f) 7, Rules of Civil Procedure.

Of course delivery is essential to the validity of a deed. Title does not pass through an undelivered conveyance. Wagner y. Wagner, 249 Iowa 1310, 1316, 90 N.W.2d 758, 762, and citations; Kane v. Campisano, 255 Iowa 745, 753, 124 N.W. 2d 172, 177.

The intent of the grantor is controlling in the matter of delivery and is to be determined by his acts or words or both. Jeppesen v. Jeppesen, 249 Iowa 702, 707, 708, 88 N.W.2d 633, 636, and citations; Kane v. Campisano, supra, and citations.

For a valid delivery the grantor must intend the deed to be presently effective as a transfer of title without any reservation of control thereover. Jeppesen case, supra, and citations; Robinson v. Loyd, 252 Iowa 1086, 1092, 109 N.W.2d 619, 622; Kane v. Campisano, supra.

We have frequently held an effective delivery may be made by placing the deed with a third person, without reserving the right to recall it, with instructions to deliver to the grantee upon the grantor's death. The effect of thus placing the instrument with the third person is to reserve a life estate to the grantor with title passing immediately to the grantee, but the latter's right to possession is postponed until the grantor's death. Kane v. Campisano, supra, and citations at page 753 of 255 Iowa, page 177 of 124 N.W.2d; Oehler v. Hoffman, 253 Iowa 631, 638, 113 N.W.2d 254, 258.

A presumption of delivery arises from a recorded deed, ordinarily the burden to prove nondelivery rests on the party so alleging and the evidence thereof must be clear and satisfactory or, as we have sometimes said, clear, satisfactory and convincing. However, the presumption referred to is stronger where the deed is filed for record in the grantor's life than where the filing occurs thereafter. Jeppesen v. Jeppesen, supra, 249 Iowa 702, 708, 709, 88 N.W.2d 633, 637, and citations; Wagner v. Wagner, supra, 249 Iowa 1310, 1316, 90 N.W.2d 758, 762.

II. As previously stated, it is not claimed that E. J., grantor of the deeds to defendants, reserved the right to recall

them when he left them with Mr. Behnke. Further, it definitely appears the grantor delivered them to Behnke absolutely without reserving any such right.

The evidence is clear that E. J. wanted and intended his brother B. J. to have the entire interest in the farm. Ten witnesses so testified and there is no evidence to the contrary. The deed of a half interest to the brother O. J. was intended to secure payment to him of his share in the farm which amounted to $628.57 in addition to the mortgage against it. Defendants practically concede this. They say in argument "E. J. clearly wanted to give O. J. one half to make sure he was protected on any money he had coming."

Neither defendant had been paid for his share. The grantor evidently felt that since B. J. was to get the farm it was unnecessary to pay in money for his share and that he in turn should pay O. J. for his share if the grantor did not do so during his life. To carry out his intent E. J. instructed Mr. Behnke, when he left the two deeds with him, to ask O. J. upon E. J.'s death if he had been paid for his share, if he had been paid to ask him for a deed of his interest to B. J. and deliver the three deeds to B. J.

As instructed, Behnke contacted O. J. soon after E. J. died, asked him if he had been paid for his share in the farm and was told B. J. had paid him. Behnke then asked O. J. if he would deed his interest in the farm to B. J., O. J. assured him he would and such a deed was prepared and executed. Behnke then delivered the three deeds to B. J. who took them to the courthouse to be recorded.

It would seem that if the grantor were to be consistent and logical he might have instructed the depository not to deliver to the grantee the deed to B. J. unless he had paid O. J. for his share. But we think the evidence does not clearly show the grantor attached such a condition to delivery of the deed to B. J. As indicated, the burden rests on plaintiffs to prove nondelivery of the deeds and the evidence thereof must be clear and satisfactory.

When the deposition of Mr. Behnke was taken it is evident he had failed mentally and was confused as to the oral instruc-

tions given him more than 20 years earlier. The secretary who prepared the two deeds left with Behnke died before the trial so her evidence is lacking.

We conclude there was a good delivery in the grantor's life of the deed of a half interest to B. J. Whether there was a valid delivery of the other deed to O. J. in the grantor's life is perhaps doubtful. But any such doubt does not entitle plaintiffs to the relief they ask. They claim there was no valid delivery of both deeds and that the entire interest in the farm should go to the mother's heirs. Plaintiffs do not claim or suggest anywhere that only a half interest—the interest deeded to O. J.—should be awarded them. We are not justified therefore in quieting title to plaintiffs in only a half interest in the land on the ground the deed to O. J. of such an interest was not delivered.

III. It is unnecessary to decide whether there would be a good delivery of the two deeds left with Behnke if the deed to O. J. were left with instructions to deliver to the grantee at the grantor's death upon condition that the grantee would convey his interest to B. J., and if the deed to B. J. were left with instructions to deliver to him at the grantor's death upon condition that the grantee pay O. J. for his share in the land. However, we have carefully considered such question.

No recent decision of ours deals with such a question. However, we will say it is not clear that either of the above conditions which plaintiffs claim were attached to placing of the deeds with Behnke would invalidate their delivery as of the time they were left with him.

Jackson v. Jackson, 67 Ore. 44, 135 P. 201, Ann. Cas. 1915C 373, is a leading precedent on this point. There a mother made a deed which was left with a banker with instructions to deliver to her grantee-son 90 days after her death and after the son paid a total of $2000 to other heirs. It was held that upon the grantee's tender of the sums to the named persons there was a good delivery of the deed which related back to the date it was placed with the banker.

The note to the cited case in Ann. Cas. 1915C 378, 381, states: "The weight of authority is in accord with the holding of the reported case that the deposit of a deed to be delivered

on the performance of a condition after the death of the grantor stands on the same footing as a deposit for delivery unconditionally after the grantor's death, so that the grantee may after the death of the grantor perform the condition and take the title as of the date when the deed was deposited."

Dettmer v. Behrens, 106 Iowa 585, 76 N.W. 853, 68 Am. St. Rep. 326, and Stewart v. Wills, 137 Iowa 16, 114 N.W. 548, are among the cases cited for this view. See also annotation, 52 A. L. R. 1222, 1246, 1247.

IV. Three days before the trial plaintiffs amended their petition by alleging that in any event defendants deeded all their interest in the land to E. J. Engelkes in the summer of 1942 and he retained title until his death in 1961. As previously explained, it is claimed the deed from the mother's heirs to E. J., dated August 15, 1941, was not delivered until after the two deeds from E. J. to his brothers, now sought to be set aside, were left with Mr. Behnke. In other words, it is said that even if E. J. divested himself of title when he left the deeds with Behnke he became reinvested with title by the alleged later delivery of the deed from the heirs.

The deed to E. J. from the heirs and the acknowledgment are both dated August 15, 1941. In the absence of evidence to the contrary a recorded deed is presumed to have been delivered on the date of its execution and acknowledgment. The burden was therefore upon plaintiffs to prove the deed from the heirs was not delivered prior to March 12, 1942, when the deeds to defendants were placed with Behnke. Richardson v. Estle, 214 Iowa 1007, 1009, 1010, 243 N.W. 611; Tucker v. Glew, 158 Iowa 231, 234, 139 N.W. 565, and citations; 26A C. J. S., Deeds, section 185, pages 20, 21. See also Conway v. Rock, 139 Iowa 162, 165, 117 N.W. 273. In Tucker v. Glew the deed was not recorded until six years after the date of its execution.

None of the four plaintiffs or their spouses who were present at the settlement in August 1941 and then signed the deed attempted to testify in support of their claim it was not delivered until the summer of 1942. They seek to justify this failure by saying the so-called dead man statute, section 622.4, Code, 1962, sealed their lips as to delivery of the deed to E. J.

At best it is extremely doubtful that defendants are within a class protected by this statute and claim as such. It is true the brothers are heirs of the deceased, E. J., but they do not claim as heirs. Unless they are *assignees* of decedent and claim as such they do not have the protection of the statute. Defendants claim as grantees of the deeds to them. We have indicated that one claiming as grantee of a deed from a decedent is not an assignee of his and is not entitled to the protection of section 622.4. Benson v. Custer, 236 Iowa 345, 352, 353, 17 N.W.2d 889, 892, 893; Bell v. Pierschbacher, 245 Iowa 436, 445, 446, 62 N.W.2d 784, 789, 790.

Then too there was no assurance defendants would object to the competency of plaintiffs, under the dead man statute, to testify upon the point under consideration.

If there was the claimed delay in the delivery of the deed to E. J. the four plaintiffs who signed it and their spouses should have known of it.

Plaintiffs took the discovery deposition of defendants prior to the trial. O. J. then testified, partly in response to leading questions in the nature of cross-examination, he thought the deed to E. J. was delivered in the summer of 1942. In response to questions of like nature B. J. then said he thought O. J.'s testimony on the point was correct but he would not say whether delivery was in the spring or summer. The spouse of one defendant testified in the deposition she supposed the testimony of O. J. and B. J. was correct. The other spouse said she thought it was.

On the trial the spouses testified they did not know when E. J. got the deed. This, we think, is obviously correct. The brothers then said they intended E. J. to have the deed, with no strings attached, at the time it was executed. The three brothers seem to have been harmonious at all times and the two who are defendants never questioned that E. J. was entitled to the farm when the deed was signed—at least to their interest in it.

There was a delay in final settlement of all matters among the mother's heirs. The sisters and their spouses contended they should receive more for their interest in the farm than E. J. agreed to pay them. These contentions were advanced for sev-

eral years after the deed was recorded June 15, 1942, and even after the sisters accepted the money for their shares. There was a large mortgage on the land to the Federal Land Bank and a smaller one to E. J. There was stock in the land bank to be disposed of. The record in the partition action was to be expunged and this was done. Real-estate taxes were to be paid. The relative (not an heir) who called the meeting of the heirs on August 15, 1941, was to receive a small commission for his part in the sale of the farm. No attorney attended this meeting and it is not surprising the sisters and brothers were not agreed on all these matters.

There is no evidence that any plaintiff or defendant had possession of the 1941 deed after its execution. It was left with Behnke who was attorney for E. J. and his two brothers.

There are some circumstances which perhaps cast suspicion on the conclusion the deed was delivered when executed or at least before the deeds to defendants were left with Behnke in March 1942. As stated, E. J. signed the deed along with the other heirs. We are told he would not have done so if it were then agreed he was to purchase the land. About two weeks after the heirs agreed upon the settlement a decree was entered in the partition action. We understand an attorney in Grundy Center brought the action for one of the sisters. There is no evidence he was advised of the settlement before the decree was taken.

Excerpts from correspondence between the Grundy Center attorney and Mr. Behnke were offered, mainly regarding title to the land bank stock, paying the incumbrances against the land, and the amount due each heir other than E. J. It is doubtful if this evidence was admissible. In any event it adds little to what we previously said regarding delay in settlement.

 It is a familiar statement in this class of cases that the question of delivery of a deed is largely one of intent and if from all the circumstances it appears the grantors intended by their acts to pass present title there may be a sufficient delivery. Hilliard v. Hilliard, 240 Iowa 1394, 1398, 1399, 39 N.W.2d 624, 626, and citations. See also Jeppesen v. Jeppesen, supra, 249 Iowa 702, 707, 708, 88 N.W.2d 633, 636, and citations.

 Another rule has application here. Plaintiffs' allega-

tion is that defendants—E. J.'s two brothers and their spouses—deeded their interest in the land to him in the summer of 1942. As stated, reliance is on the claim delivery of the deed to E. J. was not made until then. It appears to be well settled that delivery of a deed by one or more, but not all, joint grantors constitutes a valid delivery as to them. Annotation, 162 A. L. R. 892, 896, and citations.

No good reason appears why these defendants did not intend delivery of the 1941 deed to be complete, as to them, in E. J. at the time it was executed. Both brothers-defendants evidently thought he was entitled to buy the land and wanted and intended him to have it. Plaintiffs, not defendants, were dissatisfied with the transaction.

We conclude plaintiffs have not carried the burden of proving delivery of the deed of defendants' interest in the farm, at least as to them, was not made until after the deeds to defendants were left with Behnke. Thus we need not consider whether, if there were the alleged delay in delivery, the interest subsequently acquired by E. J. at the time of delivery passed to defendants when the warranty deeds from him were left with Behnke.

The equities favor defendant B. J. As previously stated, he and E. J. lived on the farm from the time their mother died in 1921. From 1927, when B. J. was married, he and his wife made a home on the farm for E. J. In 1948 both E. J.'s legs were broken and his brother did most of the farm work after that. It clearly appears E. J. desired his brother to have the farm. The brother was the natural object of E. J.'s bounty. Plaintiffs had no particular claim thereto.

After considering all questions presented, the judgment is —Affirmed.

All JUSTICES concur.