TIM VIPOND, appellant, v. WENDELL JERGENSEN, appellee.

No. 52305.

(Reported in 148 N.W.2d 598)

FEBRUARY 7, 1967.

REHEARING DENIED MAY 1, 1967.

Winkel & Winkel, of Algona, for appellant.

Linnan, Lynch & Straub, of Algona, for appellee.

LARSON, J.—Plaintiff Tim Vipond sought damages for personal injuries sustained by him while riding in an automobile

owned by the defendant Wendell Jergensen and operated by his son Charles. The action, brought in two counts, charged Charles with reckless operation and alleged plaintiff was not a guest. At the close of plaintiff's evidence a verdict was directed against him on both counts. The court held (1) the evidence was insufficient to permit a jury-finding of recklessness, and (2) the evidence was insufficient to permit a jury-finding that the accident trip was for the mutual, definite and tangible benefit of the operator and the plaintiff. Thus we have before us in this appeal the two most controversial and troublesome issues courts have had to deal with under section 321.494, Code 1962, better known as the Iowa Guest Statute.

I.  Section 321.494 provides: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

This statute permits recovery by a guest for damages resulting from "reckless operation" of the vehicle, in lieu of his former common-law right based on mere negligence. Goetsch v. Matheson, 246 Iowa 800, 803, 68 N.W.2d 77, 78. Many pages have been written in an effort to distinguish between recklessness and negligence under this statute.

Consistently we have concluded it is not the court's duty to determine whether defendant was reckless, but we are required to examine the evidence to determine whether there is sufficient evidence from which a jury might reasonably draw an inference of reckless operation. Rule 334, Rules of Civil Procedure; Kauzlarich v. Fitzwater, 255 Iowa 1067, 1069, 125 N.W.2d 205. In Shoop v. Hubbard, 259 Iowa 1362, 147 N.W.2d 51, we carefully considered applicable principles and definitions, many former decisions, and authorities reviewing our previous decisions. They need not be repeated here.

The burden to prove facts from which inferences of recklessness may be found, of course, is upon the plaintiff. Goodman v. Gonse, 247 Iowa 1091, 1099, 76 N.W.2d 873. We

must consider the evidence in a light most favorable to the plaintiff regardless of whether it is contradicted. Shoop v. Hubbard, supra; Lewis v. Baker, 251 Iowa 1173, 1177, 104 N.W.2d 575, 577, and citations.

Reckless operation under our guest statute means more than negligence, more than the want of ordinary care. It means, proceeding with no care coupled with disregard for consequences. The acts must manifest a heedless disregard for or indifference to the rights of others in the face of apparent danger or be so obvious the operator should be cognizant of it, especially when the consequences of such actions are such that an injury is a probability rather than a possibility. Recklessness may include willfulness or wantonness, but if the conduct is more than negligence it may be reckless without being willful and wanton. We have required evidence of a persistent course of conduct to show no care with disregard for consequences. If it were not so required, we would be allowing an inference of recklessness from every negligent act. Kauzlarich v. Fitzwater, supra; Delay v. Kudart, 256 Iowa 523, 530, 128 N.W.2d 201, 205; Martin v. Cafer, 258 Iowa 176, 179, 138 N.W.2d 71, 73, 74; Clark v. Marietta, 258 Iowa 106, 113, 138 N.W.2d 107, 111, and citations in each.

Turning, then, to the first issue, it must be determined whether plaintiff by a preponderance of the credible evidence, which means substantial evidence of probative value, has proven facts from which an inference of recklessness may be fairly and reasonably drawn, bearing in mind that this issue cannot be left to speculation, conjecture or surmise. The trial court thought such facts were not so proven, and we agree.

II. The salient facts developed by the evidence disclose that Tim and Charles were close friends, schoolmates, and constant companions. Each had an available automobile and they took turns driving to school and social affairs. Both were good drivers and, until the night of this unfortunate accident, plaintiff had no complaint as to Charles' driving.

This accident occurred about 10 p.m. on August 30, 1964, as Charles was driving his father's automobile eastward on an east-west blacktop highway north of Algona, Iowa, with plaintiff as

his passenger. At an intersection with highway 169, a north-south highway, their vehicle was involved in a collision with a southbound automobile. Charles was killed, and all other occupants of the cars were seriously injured. Charles did not stop before entering this intersection. A reflectorized stop sign at the entrance to the highway could be seen by one approaching from the west for about 1500 feet. Vehicles approaching from the south on highway 169 could be seen for some distance, but there was a field of tall corn and other obstructions at the northwest corner of the intersection, and southbound vehicles could not be seen by one coming from the west until he had almost reached the highway.

Earlier in the evening Tim and Charles had been at the Dennis Jergensen residence, a half mile east of this intersection, for a social affair. Those present decided these boys should go to the Vipond residence in Algona, Iowa, to borrow a stereo record player and some records. As plaintiff did not have his car, they used defendant's. The route taken was west on the blacktop one and a half miles, then south about three miles to Algona on a gravel road. The boys had traveled this route many times and knew the road well. On the way over Charles made the required stop at highway 169. He traveled at their usual speed of about 50 to 60 miles per hour on the blacktop and about 50 on the gravel. When Tim obtained the stereo and records from his sister, they started back by the same route. After turning eastward onto the blacktop, the boys' conversation turned to hunting and some deer they had seen that morning. When they reached a point between 400 and 500 feet from the highway 169 intersection, plaintiff testified he realized where they were and warned Charles of the stop sign ahead. He also said that when Charles did not slow down and they were between 250 and 300 feet from the intersection, "I told him loud enough, 'Stop! Stop!'" Apparently Charles did not respond quickly enough and the collision occurred. Skid marks appeared 75 feet westward from the point of impact, which was 11 feet into that intersection.

III. A highway patrol officer, called by plaintiff, testified that reaction time, according to the Iowa Driver's Manual, which

is the period from the time you see an object or make a decision until you apply the brakes, would be 55 feet at 50 miles per hour and 66 feet at 60 miles per hour. In other words, skid marks would not appear for 55 feet after the decision while traveling 50 miles per hour and 66 feet at 60 miles per hour. He also said it would take 201 feet to stop a vehicle traveling at 50 miles per hour and 281 feet at 60 miles per hour. At 55 miles per hour the stopping distance would be 240 feet. It should be noted, in relating these facts we have set out the proffered testimony of Tim, which the trial court rejected as in violation of section 622.4 of the Code, otherwise known as the dead man statute. The correctness of that ruling we shall consider later.

Appellant contends this evidence is sufficient to permit an inference that Charles intended to proceed through the approaching intersection without making a stop as required by law, and that this fact, plus his knowledge of the heavy traffic on highway 169 and the restricted view to the north, is sufficient to sustain an inference of recklessness in this case.

On the other hand, appellee contends that this evidence is totally lacking in substance of probative value, that at best it tends to prove no more than a momentary inattention or inadvertence of the driver, a failure to observe their nearness to the intersection before he applied his brakes, which could amount to no more than submissible evidence of negligence, that it fails to show any conscious and intentional misconduct toward his guest, and that to permit a jury to pass on the reckless issue under these circumstances would be to allow it to determine that issue on speculation, surmise and the mere happening of an accident. He maintains the skid marks, laid down after Charles' attention was directed to the stop, clearly indicate he was unaware he was near the intersection, and his action in attempting to stop shows he had no intention to speed across the primary highway. He points out that it did not appear Charles had ever run a stop sign in the past, that his speed as they approached this intersection was excessive, or that he persisted in the face of a timely warning or remonstration by plaintiff.

IV. We have found it impossible to say specifically what evidence is or is not sufficient on the issue of recklessness,

and have preferred to pass on the issue after considering all the relevant evidence produced. However, like other courts, we have held that failure to stop at a stop sign at an intersection, in and of itself, does not constitute recklessness. Welch v. Minkel, 215 Iowa 848, 851, 246 N.W. 775; Neessen v. Armstrong, 213 Iowa 378, 239 N.W. 56. Also see annotation, 3 A. L. R.3d, Auto Accident—Stop Signal or Sign, section 44, pages 438, 439, to the effect that one inadvertently entering a stop highway without stopping, as a matter of law, was not guilty of gross negligence, citing among others Salter v. Keller (1964), 224 Cal. App.2d 126, 36 Cal. Rptr. 430, and Cusack v. Longaker (1938, 2 Cir., N. Y.), 95 F.2d 304. In Reynolds v. Langford (1961), 241 Ind. 431, 172 N.E.2d 867, the Supreme Court sustained a directed verdict for defendant and assumed the position, as a matter of law, that defendant was not guilty of wanton misconduct necessary to establish liability to a guest. The court said from the evidence it was unable to say that defendant, consciously and with knowledge that a vehicle was approaching the intersection, drove into the intersection intentionally and with reckless indifference to the consequences, knowing injury to his guest would probably result therefrom.

Unless, then, there is other evidence sufficient to show a present no-care attitude, a knowledge of his misconduct, plus a disregard for the consequences and a persistent course of conduct, the plaintiff must fail in his attempt to prove recklessness. Here we find no substantial evidence of a no-care attitude, a disregard for consequences, a persistence of conscious or willful misconduct. In our view plaintiff's testimony does not permit a finding that there was an intentional running of this stop sign, but tends only to prove a failure to keep a proper lookout and to observe his position at that time. The only evidence of knowledge and persistence in a dangerous course of conduct is that given by plaintiff, and we do not feel this is sufficient. While we have not attempted to say how long one must persist in a heedless disregard or indifference for the rights of others, obviously it must be long enough to overcome mere inadvertence.

Webster's New International Dictionary, Second Edition, defines "persist" as, "1. To go on resolutely or stubbornly in

spite of opposition, importunity, or warning; to continue firmly or obstinately; as, to persist in a bad habit; to persist in working when ill. 2. To remain unchanged or fixed in a (usually specified) character, condition, position, etc.; to continue to be."

It is not claimed Charles' speed had been dangerous or excessive, and until they were within 500 feet of the intersection nothing had happened on this trip to alarm the plaintiff. When plaintiff observed their location, he says he told Charles there was a stop sign ahead, that less than 200 feet farther on he called upon him to stop, and that he did not observe any response to these warnings until the brakes were set. At that time they were within 69 feet of the intersection and he had seen approaching car lights on the pavement ahead.

If the formula announced by the highway patrol officer is followed, we must conclude Charles would have been unable to stop after he had passed the 240- or 281-foot area, which is about the time plaintiff says he gave the second warning. If our computations are correct, there was not more than two seconds between the two warnings at 60 miles per hour (88 feet per second), and less than three seconds between the time plaintiff called out to stop and the time the brakes were set. In any event, it appears less than five seconds elapsed between the first warning and the time Charles set his brakes. Under the circumstances we think this is insufficient time to permit an inference that Charles resolutely or stubbornly, in spite of the warning, intended to speed across the intersection without making a stop. Nor is it sufficient to indicate that Charles ignored the warnings of plaintiff and was conscious of wrongdoing. There is no showing as to his reaction time under such circumstances, and we cannot find the formula applicable under every condition. Reaction of parties may well vary under different conditions, and to allow an inference of stubborn persistence from the conduct of Charles for a period of approximately five seconds appears to be unreasonable. We conclude this evidence is not of sufficient probative value to show the driver was possessed of a mental attitude with respect to both his driving and his guest which was adverse to the welfare of his guest. See Sparks v. Baldwin, Ind. App., 205 N.E.2d 173.

While these circumstances may show negligence in the failure to make a proper approach and stop, the requirement of negligence-plus is not met. It further appears there were other distractions present which may account for the driver's inadvertence and neglect. In addition to the conversation about going hunting, the boys were carefully attending the borrowed stereo and records, the latter being placed in the seat between them. In any event, it is clear that when Charles realized his dilemma he did try to stop.

Our position is supported in the recent case of Flannery v. Koch, 103 Cal. App.2d 55, 228 P.2d 580, which held: " 'The mere failure to perform a statutory duty is not, alone, wilful misconduct,' " and similar facts, viewed most favorable to plaintiff, did not show the driver was utterly indifferent to the rights of the guest when she failed to stop at a stop intersection.

To a like effect, see Salter v. Keller, Cusack v. Longaker and Reynolds v. Langford, all supra; Oxenger v. Ward, 256 Mich. 499, 240 N.W. 55; Mroz v. Vasold (1962), 228 Md. 81, 178 A.2d 403; Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001; Murphy v. Smith, 243 F. Supp. 1006; Sparks v. Baldwin, supra, 3 A. L. R.3d 438, section 44, pocket parts.

V. Other circumstances revealed here do not tend to sustain an inference of recklessness. While it is true Charles is charged with knowledge of the hazard at that intersection and knew its location, the presence of the stop sign, and of the blind corner, there is no evidence that he knew he was so close to it when plaintiff says he first warned him. He was probably negligent in failing to keep a proper lookout, and his judgment was bad as to the time lapse since he turned onto that road and his ability to stop in time, but as previously pointed out, these negligent acts do not justify a finding of recklessness. In Kauzlarich v. Fitzwater, supra, at page 1070 of 255 Iowa, we said, to allow these circumstances to raise an inference of recklessness "would be allowing an inference of recklessness from every negligent act."

In Goetsch v. Matheson, supra, 246 Iowa 800, 804, 805, 68 N.W.2d 77, we cited with approval the pronouncement in Olson v. Hodges, 236 Iowa 612, 613, 621, 19 N.W.2d 676, as fol-

lows: "* * * reckless operation of a motor vehicle is not inadvertence, momentary thoughtlessness, error in judgment, careless conduct, or negligence. Neither is it a degree of negligence."

In Matheson we find a situation somewhat like the one at hand. There also the driver, although aware of possible danger, approached a "T" intersection at 50 miles per hour, discovered his position too late, ran off the road, and injured his passenger. After a review of the circumstances, the court concluded there was insufficient evidence to permit submission of the issue of recklessness and directed a verdict for defendant. Plaintiff there also testified he did not fear or anticipate any danger until the last moments before the accident. It was urged that the driver knew he was taking a chance, that the odds were 50-50 that he was approaching a dead end, that he was playing Russian roulette when he did not slow down as he neared the intersection. The argument was rejected and we said: "Here the real unknown element was whether the car, as being driven and under the known conditions [raining], could be stopped or safely turned at the intersection. There was involved, not a gamble, but a question of judgment." Here also nothing, except his possible slow reaction, indicates Charles did not expect to stop, nor does it appear he did not believe he could stop before reaching the intersection. His failure to slow down in time does not appear as a gamble, but a misjudgment of the distance he had traveled before reaching the known hazard. Even plaintiff apparently did not realize they were so near the intersection until it was nearly too late to stop.

In Nesci v. Willey, 247 Iowa 621, 624, 75 N.W.2d 257, we pointed out: "There must be an awareness, actual or constructive, of the unusual danger presented by the circumstances, and also a manifestation of 'no care.'"

VI. Appellant relies heavily upon Allbee v. Berry, 254 Iowa 712, 119 N.W.2d 230, and Martin v. Cafer, 258 Iowa 176, 138 N.W.2d 71, as authority for the proposition that intentional and deliberate disregard of the guest's warning would amount to a persistent course of conduct which would allow an inference of recklessness. Neither case on the facts seems applicable. In the Allbee case an operator of a motor vehicle, familiar with the road,

proceeded downhill toward a "T" intersection at which he must stop at a speed of 80 to 100 miles per hour, passed a car on the way, ignored a plea to put on the brakes one-quarter to one-half mile from the intersection, and ignored a warning signal 600 feet from the stop sign which was 110 feet from the intersection. There we had both excessive speed and a disregard of verbal and posted warnings in ample time before the intersection was reached. The driver's timely awareness of the hazard was established. The situation in Martin v. Cafer is also distinguishable. There, after exceeding the speed limit for three quarters of a mile over the protests of the passenger who asked to be let out if he intended to continue, the operator of a small car tried to turn a sharp corner and rolled the car, injuring the guest. The distinction, we think, is evident. While the evidence in Allbee and Martin was sufficient to generate a jury question on recklessness, the facts disclosed in the instant case fall far short of doing so on speed, awareness of the hazard, and timely warning.

It would unduly extend this opinion to consider each of the cases cited by the parties. Those referred to are closer on facts than any others we have found or had called to our attention.

VII. The owner of a car operated with his consent cannot use the dead man statute to object to evidence of warnings or statements made to the operator by the guest when he is sued for the acts of the deceased driver. As bearing on this proposition, see O'Brien v. Biegger, 233 Iowa 1179, 11 N.W.2d 412; Bell v. Pierschbacher, 245 Iowa 436, 62 N.W.2d 784; Klosterboer v. Engelkes, 255 Iowa 1076, 125 N.W.2d 115; Turbot v. Repp, 247 Iowa 69, 72 N.W.2d 565. The trial court erroneously excluded the testimony of plaintiff that he warned Charles of the stop ahead. This testimony was not in violation of the dead man statute, and appellee now does not seriously contend otherwise.

Appellee's position before us is that, even though the excluded evidence of plaintiff's conversation with Charles and his reactions were considered, this testimony, together with the other evidence, failed to generate a jury question of recklessness, citing Fortgang Brothers, Inc., v. Cowles, 249 Iowa 73, 85 N.W.2d 916;

Mortimer v. Farmers M. F. & L. Ins. Assn., 217 Iowa 1246; 249 N.W. 405. From what we have said in Division IV, supra, it is apparent that we agree.

VIII. One who rides in an automobile for the definite and tangible benefit of the owner or operator is not a guest, and recovery for injuries suffered by such a rider may be based upon the negligence of the operator. Knutson v. Lurie, 217 Iowa 192, 195, 251 N.W. 147, 149. This pronouncement has been repeatedly followed or cited with approval by courts of this and other states. Ritter v. Dexter, 250 Iowa 830, 835, 95 N.W.2d 280; Stenberg v. Buckley, 245 Iowa 622, 630 to 632, 61 N.W.2d 452, and citations; Thuente v. Hart Motors, 234 Iowa 1294, 15 N.W.2d 622; Zwanziger v. Chicago and N. W. Ry. Co., 259 Iowa 14, 141 N.W.2d 568; Winter v. Moore, 255 Iowa 1, 121 N.W.2d 82; Bodaken v. Logan, 254 Iowa 230, 117 N.W.2d 470. Also see 60 C. J. S., Motor Vehicles, section 399.5(b), page 1013, where it is stated, if his carriage "is primarily for the attainment of some objective or purpose of the owner or operator * * * he is not a guest."

Was there substantial evidence here that the trip was for the mutual, definite and tangible benefit of the driver and plaintiff? The trial court thought not, and we agree. We find no substantial evidence of a tangible benefit to the driver, monetary or otherwise, which was a motivating influence for furnishing the transportation.

In the Ritter case, supra, it was found the rider taken along to aid in recovering the driver's stolen fender skirts was sufficient to take the rider out of the guest status. In Winter, supra, plaintiff went to Omaha to help the driver choose a wedding gift from both parties. In Bodaken, supra, the trip to Sioux City was to aid the driver select nurses uniforms and advise on types considered.

When the purpose of the trip appeared to be purely social, we have consistently held the passenger is a guest under our law. See Hessler v. Ford, 255 Iowa 1055, 125 N.W.2d 132, 98 A. L. R.2d 539; Murray v. Lang, 252 Iowa 260, 106 N.W.2d 643; Reeves v. Beekman, 256 Iowa 263, 127 N.W.2d 95; Liv-

ingston v. Schreckengost, 255 Iowa 1102, 125 N.W.2d 126; Delay v. Kudart, 256 Iowa 523, 128 N.W.2d 201.

Of course, one who claims the guest statute is not applicable has the burden to prove his status was other than a guest. Viewing the evidence in the light most favorable to plaintiff, as we must do when a verdict is directed against him in such a proceeding (Ritter v. Dexter and Winter v. Moore, both supra), we fail to find he has sustained his burden. Plaintiff testified:

"We were in the house listening to the record player and then we decided we would go over to my house and get some different records and my sister's stereo, if she would loan it to us. We had been using Denny and Carol's machine, which was not a stereo but just an ordinary record player and would not play stereo records. Everybody wanted to listen to different records and my sister had some, so I thought if we would go over there, we could borrow her record player, so we all decided to go over there and get it. Charles knew my sister had a record player because he had been out to our place on other occasions and listened to it."

In our most recent case of Livingston v. Schreckengost, supra, we reviewed and discussed this issue in detail and, although we held there a jury issue was resolved, it was pointed out, where a passenger is a social guest or a casual invitee, he is usually regarded as a guest even though he may contribute something toward the expense of the trip.

True, as contended, Charles needed the assistance of plaintiff in order to borrow the stereo player and records, but it is not shown he received any specific benefit from that transaction. Except as a member of the social group that desired to hear this music, he was not benefited. We hold such benefit to Charles or defendant did not rise to the status of a definite and tangible benefit sufficient to remove plaintiff from the status of a guest.

Having found no reversible error, the judgment of the trial court must be and is affirmed.—Affirmed.

GARFIELD, C.J., and THORNTON, SNELL and MOORE, JJ., concur.

BECKER, STUART, MASON and RAWLINGS, JJ., dissent.

BECKER, J.—I dissent to Divisions I through VI and the result. If we follow the rule that the evidence is to be considered in the light most favorable to plaintiff the following facts appear.

1. The accident occurred on a major, heavily traveled, arterial, United States Highway at about 10:30 p.m. on a dark, clear night.

2. At the intersection in question this highway was protected by a reflectorized stop sign visible for 1500 feet to the west.

3. Decedent's car ran this stop sign and collided with a car properly using the arterial highway.

4. The car approached the intersection at 50 to 60 miles per hour.

5. Decedent driver was very familiar with this particular intersection, lived in the near vicinity, and had traversed it at least twice that day and at least once a week over the past two years.

6. Plaintiff warned decedent of the presence of the stop sign when about 400 or 500 feet from it. Decedent did not slow down.

7. At about 250 to 300 feet from the intersection plaintiff said to decedent, "Stop! Stop!" Decedent did not decrease speed.

8. At 200 feet the car maintained the same speed. At 150 feet plaintiff saw the lights of a car approaching the intersection on highway 169 from the north and immediately heard the squeal of brakes. He remembers no more.

9. The intersection visibility was obstructed along decedent's route to it by a cornfield, corncrib and other obstructions. He was in fact entering a practically blind intersection as to traffic from the north.

10. Decedent's car laid down 75 feet of skid marks. Eleven feet of skid marks traversed highway 169. The stop sign was 30 feet back from the highway. Thus the skid marks only started some 34 feet before the stop sign.

11. The highway patrolman testified as to stopping distances and reaction time. He put reaction time at 55 feet at 50 m.p.h. and 66 feet at 60 m.p.h.; total stopping distance including reaction time was put at 201 feet at 50 m.p.h. and 281 feet at 60 m.p.h. This testimony was admitted without objection.

From these facts the jury could conclude that decedent intended to deliberately run this stop sign and did not change his mind until the lights of the other car became apparent when he was about 150 feet from the intersection. Then it was too late.

I. We are not concerned here as to whether the jury could properly conclude that this stop sign was run through inadvertence and mistake. This is not the point here. It is for the jury, not for the court, to determine this issue. Mescher v. Brogan, 223 Iowa 573, 272 N.W. 645. We do not weigh the evidence. Clark v. Marietta, 258 Iowa 106, 138 N.W.2d 107.

Most recently we have consolidated our definition of recklessness and our recitation of its essential elements into the following language:

"Reckless operation of a motor vehicle as used in our 'guest statute', section 321.494, Code 1962, means more than negligence, more than want of ordinary care. It means, proceeding with no care coupled with disregard for consequences, the acts must manifest a heedless disregard for or indifference to the rights of others in the face of apparent danger or so obvious the operator should be cognizant of it, when the consequences of such actions are such an injury is a probability rather than a possibility. Recklessness may include willfulness or wantonness, but if the conduct is more than negligence it may be reckless without being willful and wanton. The elements of recklessness are: (1) No care coupled with disregard for consequences, (2) there must be evidence of defendant's knowledge, actual or chargeable, of danger and proceeding without any heed of or concern for consequences, and (3) the consequences of the actions of the driver are such that the occurrence of injury is a probability rather than a possibility. We have required evidence of a persistent course of conduct to show no care with disregard for consequences. If it were not so required we would be allowing an inference of recklessness from every negligent act.

Kauzlarich v. Fitzwater, 255 Iowa 1067, 1069, 1070, 125 N.W.2d 205, 206; Delay v. Kudart, 256 Iowa 523, 530, 128 N.W.2d 201, 205; Martin v. Cafer, 258 Iowa 176, 179, 138 N.W.2d 71, 73, 74; Clark v. Marietta, 258 Iowa 106, 113, 138 N.W.2d 107, 111, and citations in each." Shoop v. Hubbard, 259 Iowa 1362, 1364, 1365, 147 N.W.2d 51, 53.

If the jury could conclude that there was a deliberate attempt to run this practically blind, heavily trafficked, major intersection, reasonable minds could concur that such an act shows a disregard for consequences, a no care attitude, a heedless disregard and indifference to the rights of others in the face of apparent danger. Thus the foregoing test would be met as a jury question unless the claimed lack of persistence is fatal. This latter element will be examined later.

Prior stop sign-guest statute cases in Iowa are not comparable. In Neessen v. Armstrong, 213 Iowa 378, 239 N.W. 56, the accident occurred in the city, the only evidence of the operation of the car as it approached the stop sign was that it slowed down, but did not stop, and then proceeded into the intersection. The factual situation is different. (I would add that a rolling stop or a hesitation stop might well be considered only negligence under traffic conditions prevalent in the town of Grundy Center in 1931, but something very different on a blind, arterial highway intersection under 1964 traffic conditions.)

Welch v. Minkel (1933), 215 Iowa 848, 246 N.W. 775, was another rolling stop-city intersection situation. Again this court held as a matter of law that there was no recklessness. It would appear that slowing from 20 or 25 m.p.h. to 15 or 20 m.p.h. and going through a stop sign is far different from approaching a blind intersection at 50 or 60 m.p.h. Again, I would observe that such conduct in 1933 seems (to me at least) to be different in kind from similar conduct under traffic conditions prevailing in 1964.

The weight of authority seems to be that deliberately running a stop sign may be sufficient to make a jury question on the issue of willful or wanton misconduct under a guest statute. 8 Am. Jur.2d, Automobiles and Highway Traffic, section 514,

page 75 states: "The gross negligence, wilful or wanton misconduct, or recklessness, which is the condition of liability of the owner or operator of a motor vehicle for injuries sustained by a gratuitous guest under a guest statute or comparable common-law rule, may be predicated upon the failure of the operator to observe, or his disregard of, a traffic sign, signal, or marking. For example, the failure of a motorist-host to stop at a stop sign may be sufficient, either alone or in conjunction with other acts or omissions, to take to the jury the question of his liability to his guest under a guest statute or comparable common-law rule requiring a showing of gross negligence, or wilful or wanton misconduct."

As noted by the majority, at 3 A. L. R.3d, page 180, we find a very extensive annotation on duties in relation to stop signs. At page 430 et seq. of that annotation we find a large collection of cases relating to violation of stop signs as a basis for gross negligence or recklessness under the various guest statutes. It would appear that by far the greater number of cases supports the following statement:

"The violation of an ordinanee or a state law requiring a person to stop before crossing a main thoroughfare is ordinarily negligence per se; but when there is evidence * * * that a defendant in operating his automobile approaches a dangerous highway crossing, along which his view is obstructed, and, with conscious and timely knowledge of the existence of a stop signal, marking the intersecting highway as a main thoroughfare, drives on at a high and dangerous speed and in disregard of the injunction to stop, a question of fact as to wanton misconduct is presented for the determination of the jury under instructions of the court." Jenkins v. Sharp (1942), 140 Ohio St. 80, 84, 23 Ohio Ops. 295, 297, 42 N.E.2d 755, 757.

II. The majority opinion recites the three essential elements of recklessness, oft repeated in our prior cases. It then adds the phrase, "We have required evidence of a persistent course of conduct to show no care with disregard of consequences. If it were not so required, we would be allowing an inference of recklessness in every negligent act." This new element should not become an absolute necessity in all cases. It has validity

where there is insufficient or no evidence of *willful disregard* of consequences. In such cases the persistent acts which ordinarily are simple negligence may in that persistent course of conduct be found to evidence a reckless disregard of consequences.

But where, as here, the evidence may reasonably be interpreted to show deliberate and willful intent to violate the type of moving traffic violation that inevitably brings with it the probability of injury to self and others, then it would seem that recklessness would be a permissible conclusion with or without prior similar acts.

In a similar case cited by the majority the dissent on this point is worth repetition in part at least.

"Another point of confusion illustrated here is as to whether the case against the driver must necessarily include 'something in the nature of a continued or persistent course of action' (presumably negligent action). Evidently the opinion of the court rests on the supposed absence of this factor from the evidence as well as on the presence of friendship between driver and guest, though the relative importance of the two considerations is not disclosed. Now it is difficult for me to conceive of anything more 'persistent' than the act of a driver who approaches a thoroughfare guarded by stop signs, knowing it in advance to be so guarded, and then (as there was ample reason to believe) deliberately crosses without stopping at such speed that the resulting collision with a car on the thoroughfare violently throws his three guests out of his closed car, as well as throwing one passenger out of the other closed car. If that is not 'persistent', then it is also not persistent deliberately to aim a pistol at another and pull the trigger. But be that as it may, we have never clearly held and should not hold it to be a necessary condition of gross negligence, that at some time or other prior to the accident the defendant must have been doing the same kind of negligent acts that caused the collision—or perhaps similar kinds of negligent acts. Does the court here mean to infer that, if Mr. Blake had 'run' two or three earlier stop signs, or perhaps only one, then the verdict would be allowed to stand? Possibly it does. But if so, is there any logical

difference as regards mental attitude between a man who *deliberately* runs one stop sign and one who, deliberately or non-deliberately, runs also the preceding several signs? In other words, is not the idea of continuity or persistency but another phase of the idea of intent to do the negligent act or make the negligent omission? When a driver knowingly dashes at high speed past a stop sign into a plainly crowded thoroughfare, surely we will not say there is no basis of gross negligence just because he started his journey only a block or two away and therefore had no earlier opportunity to commit the same act. The Restatement, Torts, gives this very example as one of a clear case of recklessness or gross negligence as distinguished from the inadvertence or mere carelessness, which is ordinary negligence. See sec. 500, Comment b." Rogers v. Blake, 150 Tex. 373, 381, 240 S.W.2d 1001, 1006.

This case deals with gross negligence rather than recklessness but the definitions are essentially the same. The case is cited as authority by the majority.

The requirement of persistence seems to be relatively recent in our cases. The phraseology seems to have been based on Wilcox v. Hilligas (1962), 254 Iowa 204, 210, 117 N.W.2d 42, where this court decided as a matter of law that kissing while driving could not be deemed reckless driving.

"Reckless conduct, like negligent conduct, starts at some point of time. What we are concerned with is evidence from which the inference of reckless conduct may properly be drawn. With few exceptions we have required evidence of a persistent course of conduct to show no care coupled with disregard of consequences, the primary element of recklessness. This is true because if it were not so required we would be allowing an inference of recklessness from every negligent act. We cannot say the result was so obvious the conduct of defendant amounted to no care or that injury was the probable result. It is common knowledge that young drivers kiss their girl friends while driving, and have since the advent of the automobile. This is perhaps negligent conduct so far as the operation of the vehicle is concerned, but from the record presented we hold there is not a

permissible inference of reckless operation. As supporting this view, see Neyens v. Gehl, 235 Iowa 115, 15 N.W.2d 888."

From this rather innocuous start we have usually added a need for persistent conduct without relying on that phrase. No critical examination of just when persistent conduct should be required has come out of our cases. Certainly a persistent series of negligent acts may be taken as indicative of reckless indifference. But this should not be necessarily so. If the act can be found to be deliberate, the consequences probable and risk unreasonable within the framework of our prior definitions the result should not turn on how long or how many times the actor repeated the same act. Again, this is better left to the jury.

Put differently, a persistent course of conduct may be persuasive in showing recklessness under given fact situations. It should not be a *sine qua non* to recovery if the single act rises to the definitive requirements of recklessness. Hence *deliberate* failure to heed a stop sign, or a stop-and-go red light, or an activated railroad sign, or a yellow no passing line, or any of many other such serious violations with a high degree of probable disastrous results, could result in a finding of recklessness without repetition. Indeed the chance for repetition may never come.

It seems that the definition of recklessness and our application of that definition has carried the restrictions of the guest statute far beyond what could reasonably have been intended by the legislature. Between what is clearly simple negligence and what is clearly reckless conduct there is a substantial gray area. The cases in the gray area should be submitted to the jury with proper instructions. This case is well within that area.

I would reverse with instructions to grant a new trial on the issue of recklessness.

JUSTICES STUART, MASON and RAWLINGS join in this dissent.